Argued and submitted December 12, 1980,
reversed and remanded March 30, 1981

FARRELL,
*Petitioner,*

*v.*

OREGON STATE PENITENTIARY,
*Respondent.*

(No. 06-80-283, CA 18509)

625 P2d 1380

Gary D. Babcock, Public Defender, Salem, argued the cause and filed the brief for petitioner.

Scott McAlister, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

Petitioner, an inmate at the Oregon State Penitentiary, petitioned for review of the action of the Oregon State Prison Disciplinary Committee, imposing a sanction of nine months segregation for violating OAR 291-105-015 (a)(2), Unauthorized Organizations:

"Except as specified by the 'Rules Governing Inmate Clubs and Group Activities', or by the functional unit manager, no inmates shall create, promote or participate in any club, association or organization."

On or about June 28, 1980, the Institutional Security Manager, H. L. Whitley, filed a misconduct report concerning petitioner substantially as follows:

"I have received information from an eyewitness informant whose identity must remain anonymous as disclosure would jeopardize his personal safety and whose information has proven reliable in the past, that you and other inmates have conspired to cause a disturbance in the near future for the purpose of gaining control of the institution. The informant said 'Farrell and Bridgeman are starting a group known as the Brotherhood, a group of former OSCI inmates who are out to get rid of all snitches and take control of the institution'. Supt. Cupp has not authorized the creation or existence of the Brotherhood."

On June 30, 1980, a hearing was held on the charge in accordance with prison procedure. At the hearing, petitioner denied that he was involved in any attempt to organize former OSCI inmates into a group known as the Brotherhood. He also denied knowledge of the existence of any such group. The Hearings Officer also received in evidence the verbatim statement of the unnamed informant and the oral testimony of Security Manager Whitley. Pending the Hearings Officer's decision, petitioner was returned to segregation, as was his alleged co-conspirator Bridgeman. On July 1, 1980, prior to a disciplinary decision having been rendered, Whitley received from an unidentified source a prisoner "interview request" directed to Hoyt C. Cupp, Superintendent of the Oregon State Penitentiary. The prisoner interview request, or "kite" as it is referred to in prison parlance, was undated, unsigned and hand printed, as follows:

"To Cupp — King Pig

"Your's is coming pig dog, you think that you can get away with all this shit you will get yours. The White Brotherhood still lives in this pen, and we will revenge for our brothers who you put in the hole, you sick pig, you will die.

"White power lives on.

> White Brotherhood
> We are here."

The hearing was reconvened on July 3, 1980. At this time the Hearings Officer read the text of the kite into the record and recited:

"The document which was submitted to me Mr., by Mr. Whitley which I have just read into the record, establishes the existence of the Brotherhood in the institution. The information Mr. Whitley provided in his disciplinary report which was gained from his informant is that both of you [Farrell and Bridgeman] organized or were involved in the organization of the group known as the Brotherhood. Based on the evidence before me, I find you both in violation of Rule 2 - Unauthorized Organization. The Superintendent has not approved the existence of the Brotherhood in this institution. * * * "

The sole assignment of error in this proceeding is that the hearings officer erred in considering the kite in reaching her decision. We agree. ORS 421.190 provides:

"Evidence may be received at disciplinary hearings even though inadmissible under the rules of evidence applicable to court procedure and the division shall establish procedures to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to afford the inmate a reasonable opportunity for a fair hearing."

OAR 291-105-041(5) provides in disciplinary hearings:

"The evidence considered by the Hearings Officer will be of such credibility as would be considered by reasonable persons in the conduct of their affairs."

The petitioner contended at the hearing that he did not organize the Brotherhood and had no knowledge of the existence of such an organization. The unsigned, undated,

hand-printed interview request form received from an un-identified source while the petitioner was in segregation falls far short of the minimal standard for evidence in a prison disciplinary proceeding. While such evidence need not conform to the rules of evidence applicable to court trials, it must be at least sufficiently credible that reasonable persons would consider it in the conduct of their affairs. The value of the "evidence" was wholly dependent upon the credibility of a person whose identity and motives were unknown. We conclude that the kite was not such evidence as would be relied upon to establish a disputed fact by reasonable persons in the conduct of their affairs. This document was considered and relied upon by the Hearings Officer in reaching her conclusion that the Brotherhood in fact existed at the institution. In her formal findings of fact, the Hearings Officer expressly stated that "inmates Farrell and Bridgeman did create a group known as the Brotherhood and did not have appropriate authorization to do so."

Excluding from consideration the challenged document, there may have been substantial credible evidence based upon the verbatim statement of the unidentified but reliable informant upon which to sustain a finding that petitioner "promoted" the Brotherhood. But that was not the basis of the Hearings Officer's formal order, which expressly found that the organization was in fact created by petitioner and his alleged co-conspirator Bridgeman. We cannot tell from the record what findings and conclusions the Hearings Officer might have made had she not considered the document which we hold was improperly considered.

We therefore remand this matter for reconsideration.

Reversed and remanded.